# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MARGARET LAWSON, on behalf )
of minor child D.D.L., )
 )
   Plaintiff, )
 )
vs. ) Case No.  4:08CV0282 HEA/AGF
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
   Defendant. )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action is before this Court for judicial review of the final decision of the

Commissioner of Social Security denying the application for supplemental security

income ("SSI") based upon childhood disability, filed by Margaret Lawson on behalf of

her minor son, D.D.L. ("Plaintiff"), under Title XVI of the Social Security Act, 42 U.S.C.

§ 1382c.  The action was referred to the undersigned United States Magistrate Judge

under 28 U.S.C. § 636(b) for recommended disposition.  For the reasons set forth below,

the Court recommends that the decision of the Commissioner be reversed and that the

case be remanded for further consideration.

Plaintiff was born on October 31, 1992.  On December 12, 2005, Ms. Lawson

applied for SSI childhood disability benefits on behalf of Plaintiff, then age 13, claiming

a disability onset date of September 30, 2005, due to attention deficit hyperactivity

disorder ("ADHD").  After the application was denied at the initial administrative level,

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and such a

hearing was held on April 17, 2007, at which Plaintiff and Ms. Lawson testified.  By

decision dated May 29, 2007, the ALJ found that Plaintiff did not meet the criteria for

childhood disability.  Plaintiff requested review by the Appeals Council of the Social

Security Administration.  According to Plaintiff's brief, while the request for review was

pending, Ms. Lawson filed a new application for SSI on behalf of Plaintiff, which was

granted at the initial administrative level on December 28, 2007.  (Doc. #14 at 2.)  On

December 31, 2007, the Appeals Council denied review of the ALJ's decision in the

present case.  Plaintiff has thus exhausted all administrative remedies with respect to the

ALJ's decision of June 21, 2007.  This action involves the question of whether Plaintiff

was disabled from December 12, 2005, to the date of the new application for benefits.[1]

Plaintiff argues that the ALJ committed reversible error in discrediting the

opinions of Plaintiff's treating physician (Jennifer Foersterling, M.D.), an examining

consulting psychologist (Robert Schlitt, Ph.D.), Plaintiff's teachers, and Ms. Lawson's

subjective complaints, all of which showed that Plaintiff had marked limitations in

functioning, qualifying him for benefits.

## School and Medical Records and Application Forms

Plaintiff's fifth-grade report card (2003-2004 school year) showed that he did well

in the classroom, although his teacher noted in the third quarter that he was "becoming a

---

[1]    Claimants applying for SSI benefits cannot receive payments for a period
predating the month in which they apply for benefits.  20 C.F.R. § 416.335.

behavior problem" and that his focus had shifted from school work to socializing. <u>Id.</u> 154-56. An interdisciplinary evaluation completed on January 16, 2004, by Special School District of St. Louis County, Missouri, ("SSD") resulted in a diagnosis of not disabled. Cognitive functioning was assessed in the low average range, and academic achievement was assessed as within Plaintiff's cognitive ability. <u>Id.</u> 178.

On April 9, 2004, and on several other occasions in the 2004-2005 school year, Plaintiff received in-school suspensions/detentions for disruptive and defiant behavior. <u>Id.</u> at 150-52. On July 21, 2005, Plaintiff saw Psychologist Michael Kenney, Ph.D., for an assessment of inattentive behavior, at Ms. Lawson's request. Dr. Kenney diagnosed possible ("rule out") ADHD. <u>Id.</u> 237-38. On October 11, 2005, Plaintiff presented to Jennifer Foersterling, M.D., for treatment. She prescribed Adderall 10 mg daily for ADHD. On physical examination, she noted normal mental status neurologically. <u>Id.</u> 246-47. Dr. Foersterling's treatment notes from October 25, 2005, state that two teachers had reported "some improvement" but that more improvement was needed with regard to fidgeting and concentration. Dr. Foersterling increased Plaintiff's Adderall to 15 mg, with follow up in two weeks. <u>Id.</u> 243-45.

On November 3, 2005, Plaintiff's teacher sent a note home about Plaintiff's classroom disturbances during the last hour of the school day. <u>Id.</u> 137. When Plaintiff saw Dr. Foersterling for follow up on November 8, 2005, she stated that notes from school reported better focusing and better work completion, but difficulties understanding or not wanting to work during the last hour of the school day. Dr. Foersterling again

noted normal mental status. She again prescribed Adderall 15 mg daily, told Plaintiff to return in two months for follow up, and gave Ms. Lawson the name of a counselor, at Ms. Lawson's request. Id. 240-41.

Psychologist Jerry J. Bosse, Ph.D., saw Plaintiff approximately every two weeks from November 23, 2005, to January 4, 2006, after Plaintiff told a teacher that he wanted to hurt himself. Dr. Bosse indicated that Plaintiff had standard ADHD and anger that impacted Plaintiff's ability to perform basic tasks and make decisions required for daily living. Id. 256-57. Meanwhile, on December 14, 2005, Plaintiff's teacher sent another note home about Plaintiff's classroom disturbances in the last hour of class, and on January 26, 2006, Plaintiff received a two-day in-school suspension for disrespectful and defiant behavior. Id. 137.

On January 2, 2006, Ms. Lawson completed a Function Report in connection with Plaintiff's application for benefits. She indicated that Plaintiff was limited in his ability to read and understand stories in books, and to understand, carry out, and remember simple instructions. He had friends his own age, but had problems getting along with adults and teachers. He could take care of his personal hygiene, but his ability to get to school on time, to study and do homework, to accept criticism or corrections, and to obey rules was limited. Ms. Lawson reported further that Plaintiff's ability to pay attention and stick to a task was limited, except when working on arts and crafts projects. In narrative form, Ms. Lawson wrote that Plaintiff had "a hard time" with reading, spelling, communicating with adults, and saying or understanding big words. Id. 101-09.

On January 10, 2006, Dr. Foersterling increased Plaintiff's Adderall to 20 mg daily. Id. 273-74. On February 13, 2006, a three-day in-school suspension was imposed on Plaintiff for disrespect and defiance, id. 137, and on February 14, 2006, Dr. Foersterling continued Plaintiff on 20 mg Adderall, again noting normal mental status on physical examination and that Plaintiff was alert. Id. 270-71.

On March 2, 2006, Dr. Foersterling completed a Medical Source Statement in connection with Plaintiff's application for disability benefits. The statement consisted of a check-box form which asked Dr. Foersterling to assess Plaintiff's functional limitations in six domains: (1) acquiring and using knowledge, (2) attending and completing tasks, (3) interacting and relating to others, (4) moving about and manipulating objects, (5) care of self, and (6) health and physical well-being.[2] Each domain was subdivided into various areas. Dr. Foersterling did not complete the section on acquiring and using knowledge, but indicated that Plaintiff had marked limitations in almost all areas of attending and completing tasks, and in two of the ten areas of interacting and relating to others (not being disruptive; obeying authority). Id. 309-12.

The record includes School Activities Questionnaires completed by five of Plaintiff's current and past teachers, in connection with his application for disability benefits. This form asks, in check-box format, the teacher's opinion of the student's

---

[2] As will be discussed later, a child is considered disabled under the Commissioner's regulations, if he has marked limitations in two of these functional domains, or extreme limitations in one of the domains.

functioning in the above-noted six domains.  On March 17, 2006, Plaintiff's current seventh grade English teacher, Anne Moeller, wrote that she had known Plaintiff for four years.  She indicated that Plaintiff had extreme and marked limitations in almost all areas of  acquiring and using information and of attending and completing tasks; slight, marked, and extreme limitations in areas under the domain of interacting and relating to others; and extreme limitations in five areas under the domain of caring for self (avoid harmful behavior toward himself, regard for safety rules, cope with stress, cope with change, and imitate healthy adult behavior).  Id. 164-68.

On March 21, 2006, Michellet Schutte, a former teacher who knew Plaintiff for 18 months, indicated on her Student Activities Questionnaire that Plaintiff had marked limitations in some areas of acquiring and using information; marked limitations in almost all areas of attending and completing tasks; mostly only slight limitations in interacting and relating to others, with several marked limitations (e.g., following rules), and extreme limitation in the ability not to be disruptive or talk out of turn; and no more than slight limitations in the remaining two domains.  Id. 169-173.

On March 29, 2006, Plaintiff saw Robert E. Schlitt, Ph.D., for a consultative psychological evaluation at the request of Plaintiff's attorney.  Dr. Schlitt based his evaluation on, among other things, his interview with Ms. Lawson, Dr. Bosse's notes, his interview with Plaintiff, and the results of several tools including the Oppositional Defiant Disorder Rating Scale, the Inattentive Rating Scale, and the Hyperactivity/Impulsivity Rating Scale.  Dr. Schlitt noted that Plaintiff told him that in

January 2005 he had been suicidal. Dr. Schlitt reported moderate levels of depression and "near severe" anxiety. He diagnosed a mood disorder (not otherwise specified), oppositional defiant disorder, ADHD, significant depression and anxiety, behavior and learning issues, and a Global Assessment of Functioning ("GAF") score of 50.[3] Dr. Schlitt indicated in check-box format that Plaintiff had marked limitations in several areas, and slight limitations in other areas of acquiring and using information, of interacting and relating to others, and of caring for self; and marked limitations in all areas of attending and completing tasks. Id. 314-26.

On April 10, 2006, Plaintiff received an in-school suspension for disrespectful and defiant behavior. On May 9, 2006, Dr. Foersterling increased Plaintiff's Adderall to 25 mg daily, after Ms. Lawson stated that Plaintiff was not getting better at home and that Plaintiff's school said that it would call the police for the next disturbance he caused. Id. 333-36. On July 5, 2006, Plaintiff saw Psychiatrist N. Muddasani, M.D., who prescribed Prozac. Id. 325-26. Dr. Foersterling's treatment notes from August 8, 2006, stated that Plaintiff did not take the Prozac (which Dr. Foersterling noted had been prescribed by Dr.

---

[3] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. Diagnostic & Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) at 32. GAF scores of 31-40 indicate some impairment in reality testing or communication or "major" impairment in social, occupational, or school functioning; scores of 41-50 reflect "serious" impairment in these functional areas; scores of 51-60 indicate "moderate" impairment; and scores of 61-70 indicate "mild" impairment.

Muddasani after seeing Plaintiff for seven minutes) and refused to take his Adderall. Dr. Foersterling, noting that Ms. Lawson reported that the Adderall "makes a big difference," prescribed 25 mg daily and commented that a new doctor (presumably a psychiatrist) would be called. Id. 328-32.

On October 10, 2006, Dr. Foersterling reported that Plaintiff was not taking his Adderall, and that he was having attitude problems and getting poor grades. She wrote "NO problem with medicine, no headache, no stomach ache, . . . no chest pain." She wrote that Plaintiff refused to go to counseling or to another psychiatrist, but would take his medication. Adderall 25 mg daily was prescribed, with follow up in three months. Id. 327-29.

In October 2006, SSD conducted another multidisciplinary evaluation of Plaintiff (then in eighth grade) at Ms. Lawson's request, this time finding that he had ADHD and was entitled to special education services. At the time, Plaintiff was receiving failing grades in reading and social studies. Testing showed a nonverbal IQ of 110, a verbal IQ of 91, and a full scale IQ of 100 (average). It was reported that despite "preferential seating, tutorial help, extended time allowance, and organizational strategies (assignment planner) as well as medical intervention," Plaintiff continued to exhibit "difficulties with focusing, sustained concentration/effort, task completion, organization, following through with directions, and test preparation." His writing skills were noted to be in the deficient range, his computational skills in the average range, and his math reasoning skills in the borderline range. The psychological examiner noted that throughout the verbal portion of

the cognitive exam, directions needed to be repeated and clarified for Plaintiff. The report stated that according to teachers' assessments, behavior was not an area of concern, although teachers reported a lack of initiative and a short attention span; but that according to Ms. Lawson's assessment, behavior was a problem with, among other things, frequent and explosive outbursts of anger. In sum, Plaintiff was diagnosed with ADHD and it was confirmed that he required special education and other services. Id. 177-89. Accordingly, an Individualized Education Plan ("IEP") was put in place. Id. 195-202; 211-21.

At the end of 2006 and beginning of 2007, the remaining three Student Activities Questionnaires in the record were completed by Plaintiff's science teacher, literature teacher, and social studies teacher. Plaintiff's science teacher, Tracey Bidlack, whose class met in the last hour of the school day, indicated that Plaintiff had marked limitations in five out of the 11 areas listed for acquiring and using information, and between slight and marked limitations in all but one of the remaining areas; marked limitations in four of the 16 areas listed for attending and completing tasks, between slight and marked limitations in most of the remaining areas of this domain, and extreme limitations in the area of completing homework on time; and minor limitations in the other domains. She emphasized that Plaintiff seemed very withdrawn in class. Id. 229-33.

Amanda Spirk, who had been Plaintiff's literature teacher for one month, indicated that Plaintiff had marked limitations in several areas, and slight limitations in other areas of acquiring and using information; marked or extreme limitations in all areas of

attending and completing tasks; and generally slight limitations in the remaining domains. Id. 224-28. And Michael Adreon completed a School Activities Questionnaire when he had been Plaintiff's social studies teacher for three months, at which point Plaintiff had an "F" in the class. Mr. Adreon indicated that Plaintiff had marked limitations in three areas in the domain of acquiring and using information (learn new material, apply previously learned material, and apply problem solving skills) and an extreme limitation in one area of this domain (participate in class discussions); marked limitations in nine of the 17 areas listed in the domain of attending and completing tasks; and generally only minor limitations in the other domains. Id. 190-94.

**Evidentiary Hearing of April 27, 2007 (Tr. 9-25)**

Plaintiff and Ms. Lawson testified at the hearing. Plaintiff testified that he was 14 years old, in the eighth grade, and receiving special services in his classroom. He stated that he got into trouble in school on about a monthly basis for not listening. It had been a "long time" since he had an in-school suspension, but he had one the day following the hearing for not going to his seat when his teacher told him to do so. Plaintiff testified that he took Adderall daily when he woke up. After he came home from school, he would hang out with his friends, usually not doing his homework, which he would forget and leave at school. Plaintiff testified that "a long time ago" he had refused to take his medication because he did not think he needed it, but that for at least the past six months, he had been taking it regularly.

Ms. Lawson testified that the only doctor Plaintiff was currently seeing was Dr.

10

Foersterling.  Ms. Lawson had stopped taking Plaintiff to Dr. Bosse for counseling because Plaintiff resisted going and did not open up to him, and she did not like Dr. Muddasani, so she was looking for a new psychiatrist.  Ms. Lawson described the special services Plaintiff received at school and stated that he got in trouble at school about once a month or once every other month for not paying attention and not doing his homework. She confirmed that he had an in-school suspension the next day for not listening to his teacher.  Ms. Lawson testified that Plaintiff would leave his homework at school so that he could play with his friends after school instead of doing his homework.  He rarely listened to her rules, and had temper outbursts daily when he did not get his way.  Ms. Lawson confirmed that for the past six of seven month, Plaintiff had been taking his medication regularly.

### ALJ's Decision of May 29, 2007 (Tr. 31-36)

The ALJ found that Plaintiff had the severe impairment of ADHD, but that this impairment did not meet or medically equal the severity of a deemed-disabling impairment listed in the Commissioner's regulations.  In summarizing the medical evidence, the ALJ commented several times that mental status examinations were normal, while Plaintiff's allegations of disability were related to mental impairment.  The ALJ also stated that in August and October 2006 Plaintiff was not taking his Adderall and that Dr. Foersterling's October 10, 2006 treatment notes indicated "significantly that [Plaintiff] experienced no problems when compliant with his treatment regimen."

After recounting Dr. Schlitt's findings of difficulties in attention, impulsivity, and

behavior based on the evaluation tools Dr. Schlitt used, the ALJ stated: "the record of this examination fails to evidence that said limitations were corroborated by clinical findings. The record does not contain reference to adverse cognitive findings related to poor attention such as poor performance on serial sevens or threes or other such measures."

The ALJ proceeded to determine whether Plaintiff's ADHD was functionally equal to a listed impairment, in that it resulted in extreme limitations in one of the six domains listed above, or marked limitations in two of these domains. The ALJ found that there was no evidence of limitation in acquiring and using knowledge. In support of this finding, the ALJ pointed to Plaintiff's average IQ score, and stated that although the record showed "subpar performance" by Plaintiff in a variety of academic areas, this appeared to be related to attentional problems rather than to cognitive impairment.

The ALJ found that Plaintiff was markedly limited in attending and completing tasks, but that there was no evidence of extreme limitation in that domain or of limitation in the remaining four domains -- interacting and relating to others, moving about and manipulating objects, self-care, and health and physical well-being.

The ALJ stated that in reaching these conclusions, he placed "nominal weight" on Dr. Foersterling's March 2, 2006 opinion which, according to the ALJ, indicated that Plaintiff was markedly impaired in more than one functional domain. The ALJ stated that although Dr. Foersterling was a treating physician whose opinion is generally entitled to substantial weight, here the record was "non-supportive" of the limitations she found. The ALJ added that during the course of Dr. Foersterling's care, the record "routinely

indicated that mental status examination of [Plaintiff] resulted in 'normal' findings."

The ALJ stated that he also placed only "nominal weight" on Dr. Schlitt's March 29, 2006 report, which indicated that Plaintiff was markedly limited "in a variety of domains." The ALJ explained that the opinion of a consulting physician who examined a claimant only once did not constitute substantial evidence on the record as a whole, and further that Dr. Schlitt's examination was conducted not for the purpose of obtaining treatment but rather "in preparation for the proceedings herein." The ALJ did not address Plaintiff's teachers' School Activity Questionnaires, or Ms. Lawson's subjective complaints other than to say in his summary of findings that "subjective complaints are considered credible only to the extent that they are supported by the evidence of record." In sum, the ALJ concluded that because Plaintiff's impairment did not result in marked limitations in two of the six domains, or extreme limitations in one domain, Plaintiff was not disabled.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the

existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (citation omitted)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (citation omitted)).

Social security disability benefits are designed for disabled workers, but low-income parents may obtain SSI benefits on behalf of their disabled children as well. 42 U.S.C. § 1382c(a)(3)(C)(i). In order to be entitled to such benefits, a child under the age of 18 must show that he has a medically determinable physical or mental impairment resulting in "marked and severe functional limitations," which can be expected to result in death or which have lasted or can be expected to last for a continuous period of not less than 12 months. Id.

The Commissioner's regulations set out a three-step sequential evaluation process to determine whether a child's impairment results in marked and severe functional limitations. The Commissioner begins by deciding whether the child is engaged in substantial gainful activity. If so, benefits are denied. If not, at step two, the child's impairment is evaluated to determine whether it is severe. If the child's impairment is not severe, there is no disability. If the impairment is severe, at step three the ALJ compares the impairment to the childhood listings in 20 C.F.R., Part 404, Subpart P, Appendix 1. If the child's impairment meets, medically equals, or functionally equals a listed

impairment, the child is disabled.  20 C.F.R. § 416.924(d).

A child's impairment is functionally equivalent to a listed impairment if there is an extreme limitation in one of the six functional domains noted above, or a marked limitation in at least two of the domains.  Id. at § 416.926a(b)(1); Hudson ex. rel Jones v. Barnhart, 345 F.3d 661, 665 (8th Cir. 2003).  A marked limitation is one that "interferes seriously" with the child's ability to independently initiate, sustain, or complete domain-related activities; an extreme limitation is one that "interferes very seriously" with these abilities.  Id. at § 416.926a(e)(2), (3).

In the domain of "acquiring and using information," the ALJ considers, inter alia, how well a child acquires, learns, and uses information.  20 C.F.R. § 416.926a(g).  In the domain of "acquiring and using information," the ALJ considers, inter alia, how well a child acquires, learns, and uses information. 20 C.F.R. § 416.926a(g).  An adolescent child, like Plaintiff, should continue to demonstrate in middle and high school what he has learned in academic assignments.  The child should be able to comprehend and express simple and complex ideas, using increasingly complex language in learning and daily living situations. The child should also learn to apply these skills in practical ways that will help him enter the workplace after finishing school.  20 C.F.R. § 416.926a(g)(2)(v).

In the domain of "attending and completing tasks," a child's ability to focus and maintain attention and to begin, carry through, and finish his activities, including the pace at which he does so and the ease with which he changes activities is considered.  20

C.F.R. § 416.926a(h). An adolescent should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects. The child should also be able to organize his materials and to plan his time in order to complete school tasks and assignments. In anticipation of entering the workplace, the child should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or be unduly distracting to them in a school or work setting. 20 C.F.R. § 416.926a(h)(2)(v).

In the domain of "attending and completing tasks," a child's ability to focus and maintain attention and to begin, carry through, and finish his activities, including the pace at which he does so and the ease with which he changes activities, is considered. Id. § 416.926a(h). An adolescent should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects. The child should also be able to organize his materials and to plan his time in order to complete school tasks and assignments. In anticipation of entering the workplace, the child should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by peers or be unduly distracting to them in a school or work setting. 20 C.F.R. § 416.926a(h)(2)(v).

In the domain of "interacting and relating with others" the ALJ considers how well a child initiates and sustains emotional connections with others, cooperates with

others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." 20 C.F.R. § 416.926a(i). "The regulations expect that adolescents, among other things, will be able to develop friendships with children their own age; relate appropriately to other children and to adults; solve problems; express feeling; and tell stories." Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 654 (8th Cir. 2004).

When determining whether a child suffers from limitations, the ALJ must compare the child to other children of the same age without impairments. 20 C.F.R. § 416.924a(b)(3).

## ALJ's Assessment of Medical Opinions

The Court agrees with Plaintiff that the ALJ's reasoning in rejecting the March 2, 2006 opinion of Dr. Foersterling and the March 29, 2006 evaluation of Dr. Schlitt is deficient. The Court believes, however, that with respect to Dr. Foersterling's opinion, this deficiency[4] is harmless because the ALJ found that Plaintiff had marked limitations in the domain of attending and completing tasks, and Dr. Foersterling's opinion did not establish an extreme limitation in that domain, or a marked limitation in another domain.

The issue with respect to Dr. Schlitt's opinion, is a different matter because, as the ALJ recognized, if credited, Dr. Schlitt's opinion would support marked limitations in

---

[4] The ALJ did not explain, not does the Court discern, how the record was "non-supportive" of Dr. Foersterling's opinion. The fact that on physical examination, Dr. Foersterling found normal mental status does not undermine her opinion with regard to the affect of Plaintiff's ADHD on his functional abilities.

more than one functional domain. As noted above, the ALJ discredited Dr. Schlitt's evaluation because Dr. Schlitt was a consultant who examined Plaintiff only once, and because it was prepared in connection with Plaintiff's application for benefits. The ALJ also suggested that Dr. Schlitt's opinion with regard to Plaintiff's limitations was not supported by clinical findings. It is true that generally a one-time examining consultant's opinion is given little weight if that opinion is contradicted by the opinion of a claimant's treating physician. See, e.g., Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). But here, this is not the case. The ALJ did not point to any medical evidence that significantly contradicted Dr. Schlitt's opinions, but rather discounted it merely because Dr. Schlitt was a one-time examining consultant. Dr. Schlitt's evaluation was detailed and thorough, and the ALJ's statement that the limitations assessed were not supported by clinical findings is not persuasive. Nor is the fact that Dr. Schlitt's examination was conducted at Plaintiff's request in connection with Plaintiff's application for benefits a valid reason, in and of itself, to discount the evaluation, as this is commonly the circumstance under which consultants are asked for their opinions in Social Security disability cases. In sum, the Court believes that the ALJ did not provide sufficient reasons for giving Dr. Schlitt's opinion minimal weight. See Pruitt v. Astrue, No. 1:08CV20 LMB, 2009 WL 877695, at *16 (E.D. Mo. March 30, 2009) (reversing and remanding case where ALJ did not consider the opinions of examining consultants with regard to the plaintiff's mental impairments).

The Court also believes that the ALJ misread Dr. Foersterling's October 10, 2006

treatment notes as indicating that Plaintiff experienced no problems due to his ADHD when he was compliant with his treatment regimen, something which the ALJ found to be significant. The Court believes that the clear meaning of Dr. Foersterling's comment, "NO problem with medicine, no headache, no stomach ache, . . . no chest pain," was that Plaintiff had no problematic side effects from the Adderall. The record establishes only that Plaintiff did not take his Adderall from approximately August to mid-October 2006, whereas Dr. Schlitt's evaluation was conducted in March 2006.

**ALJ's Failure to Address Teachers' Opinions**

The Commissioner's regulations for childhood disabilities provide that parents and teachers, as well as medical providers, are important sources of information. 20 C.F.R. § 416.924a; Richardson ex rel. Richardson v. Massanari, No. C00-2083 MJM, 2001 WL 34152093, *10 (N.D. Iowa Sept. 27, 2001) (stating that under the Commissioner's regulations, "the observations and opinions of a child's teachers are particularly informative at [the functional equivalence] step due to the teachers' regular, ongoing interaction with, and observation of, the child over a sustained period of time").

Here, as Plaintiff argues, the ALJ did not mention Plaintiff's teachers' opinions as to Plaintiff's limitations in the relevant functional domains. Although the opinions of the five teachers who submitted a School Activities Questionnaire are not entirely consistent, there appears to be a general consensus that Plaintiff had marked limitations not only in the domain of attending and completing tasks, but in other functional areas as well. At the very least, the ALJ should have addressed the teachers' opinions.

The result of the above deficiencies in the ALJ's findings and reasoning is a decision that is not supported by substantial evidence. Having an average IQ is not substantial evidence that Plaintiff is not markedly impaired in the domain of "acquiring and using information." Cf. A.S. v. Astrue, No. 4:08CV1064 CDP, 2009 WL 1576844, at *8-9 (June 3, 2009) (explaining that advancing a grade level each year is not substantial evidence that a child is not markedly impaired in the domain of "acquiring and using information"). Furthermore, the ALJ failed to consider the specific skills listed in the regulation, and also failed to compare Plaintiff's functioning to that of other children his age without impairments.

Ordinarily, when a reviewing court concludes that a denial of disability benefits was improper, the court, out of "abundant deference to the ALJ," should remand the case for further administrative proceedings; remand with instructions to award benefits is appropriate "only if the record overwhelmingly supports such a finding." Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000). The Court does not believe that here there is overwhelming evidence that would warrant an order that benefits be awarded. Rather, the Court believes the ALJ should be granted a chance to more fully consider the record as to Plaintiff's functioning, especially in the domains of "acquiring and using information" and "attending and completing tasks" under the applicable regulations and compared to the functioning of other children Plaintiff's age. See A.S. v. Astrue, 2009 WL 1576844, at *8-9 (reversing and remanding where ALJ did not adequately discuss the relevant factors in determining how child with learning and behavioral problems

functioned in relevant domains and did not compare the child's abilities to children without a disability).

## **CONCLUSION**

The Court does not believe that the Commissioner's decision is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration of the record.

The parties are advised that they have ten days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 25th day of June, 2009.